IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Lama Hammoud** <br> **611 Villager Cir.** <br> **Baltimore, Maryland 21224** <br><br> **Plaintiff** <br><br> v. <br><br><br> **Jimmy's Seafood, Inc.** <br> **6526 Holabird Avenue** <br> **Baltimore, Maryland 21224** <br><br> **Defendant** <br> _____/ | * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * | <br><br><br><br><br> Case No._____ <br> **JURY TRIAL REQUEST** |

## COMPLAINT

Plaintiff, Ms. Lama Hammoud ("Plaintiff" or "Hammoud"), through undersigned counsel, states a complaint against Defendant, Jimmy's Seafood, Inc. ("Defendant" or "Jimmy's"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, *et seq*. ("Title VII"), for harassment, disparate treatment, and unlawful employment discrimination based on her religion, Muslim, and sex, female, and retaliation for complaining and opposing harassment, disparate treatment, and unlawful discrimination in order to secure protection of rights thereunder, to redress deprivation of those rights and to obtain such relief as is necessary to redress the injury to Plaintiff resulting from the Defendant's violations of Title VII, and demands a jury trial, as follows:

### Introduction

1.  This is a civil action for retaliation, harassment, religious and sex discrimination, and relief provided by Title VII, 42 U.S.C § 2000e, *et seq*.

2. In addition to an award of lost income with prejudgment interest in amounts to be determined at trial, Plaintiff seeks compensation for emotional pain and suffering, mental anguish, stress, anxiety and depression, and other past and future pecuniary losses resulting from the unlawful employment practices described above, and attorneys' fees and costs as provided under the under Title VII.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendant does business within this judicial district and the events giving rise to these claims occurred in this judicial district.

## Parties

5. Defendant Jimmy's Seafood, Inc. ("Jimmy's") is a corporation formed in the State of Maryland which owns and operates Jimmy's Famous Seafood, a well-known seafood restaurant/bar in Dundalk, Maryland, and is an employer covered by Title VII, 42 U.S.C. § 2000e(b).

6. Plaintiff Lama Hammoud was, at all material times, a resident of and employed by Defendant in the State of Maryland until the termination of her employment in August 2020.

## Factual Allegations

7. Plaintiff Hammoud worked at Jimmy's Famous Seafood as a server and/or bartender. She was originally employed with the company from or about July 2016 to February 2018, and was subsequently re-employed from approximately February 2019, until she was terminated on or about August 26, 2020.

8. Plaintiff Hammoud has no prior disciplinary actions and in fact brought numerous

positive customer reviews to Jimmy's Famous Seafood that cited her specifically as a reason for their review.

9. Plaintiff was never provided any type of non-discrimination, retaliation, harassment or EEO policies or complaint procedures at any time during her employment; in fact, Defendant, on information and belief, never prepared any written non-discrimination, retaliation, harassment or EEO policies or complaint procedures.

10. Plaintiff was subjected to a hostile working environment and discrimination by Saad Abou El Seoud ( "Habibi"), who was Ms. Hammoud's manager at the company.

11. Habibi was primarily a kitchen manager, however his supervisory duties also extended to servers and bartenders, and he had the authority to assign tasks to Plaintiff Hammoud and take disciplinary action against her and other employees. His responsibilities include supervising the servers and bartenders after the other managers left work and shutting down the restaurant at the end of the night.

12. Plaintiff and her sister, Dania Hammoud ("Dania"), are both Muslim, however Habibi is strict in his religious and gender beliefs, and he exacted a discriminatory and hostile working environment on Plaintiff and her sister when they did not adhere to his idea of their religion or what is expected of their sex within that religious space while in a private employment arrangement.

13. Although Plaintiff was always extremely cautious around Habibi, the improper discriminatory treatment and harassment began when Plaintiff started bartending at Jimmy's Famous Seafood in or around August or September 2019. Habibi's treatment of Ms. Hammoud only worsened when her sister began working as a bartender at Jimmy's Famous Seafood in or around October 2019.

14. For example, on or about December 17, 2019, Plaintiff Hammoud was bartending during an event at the restaurant, which her sister attended with a few other employees from Jimmy's. Habibi became extremely upset when he saw Dania sitting at the bar drinking and speaking to a man and spent more than an hour standing directly (5-6 feet) behind Dania glaring at both the Plaintiff and her sister. Habibi then came back behind the bar and was aggressive and intimidating, as he continued watching Plaintiff throughout the event. Habibi stared at Plaintiff in a discriminatory or judgmental way, with unrelenting eye contact that made Plaintiff feel uncomfortable, and as though Habibi was waiting for her to make a mistake so he could discipline her. Plaintiff left her shift in tears and called Morgan Harrell ("Ms. Harrell"), a fellow coworker and bartender, and told her what happened. Ms. Harrell informed Ms. Hammoud that Habibi expects her to practice their religion the same way that he does, meaning that while at work, Ms. Hammoud was not to speak to male guests or sell alcohol, despite that being a duty of her position as bartender.

15. Kenny Hadel ("Hadel"), the General Manager, was fully aware of Habibi's discriminatory treatment on the basis of her sex and religion because Plaintiff and her sister both spoke to him about it. The next day, Dania spoke with Mr. Hadel in the restaurant's coat room and told him that Habibi was targeting her and her sister (Lama Hammoud) for being Muslim and that Habibi was being abusive towards both Lama and her. Mr. Hadel, who was Plaintiff's second-level supervisor, told Dania that he would speak to Habibi and not to worry about it. Plaintiff met with Mr. Hadel later that day and told him exactly what had occurred and the reasons for Habibi's abusive behavior. Mr. Hadel, who was Plaintiff's second-level supervisor, told Plaintiff that it was not okay.

16. During the next workweek, Habibi completely ignored Plaintiff and her sister and

pointedly refused to speak to them at work,  Thereafter, Habibi continued to harass Plaintiff and her sister whenever he perceived them to be acting outside of religious and gender norms.

17. Habibi routinely spent longer than needed lingering around Plaintiff's work areas,  without a work reason to be present, to police what he considered to be 'non-Muslim' behavior.

18. One night when Dania and Habibi were closing the bar, Dania told him that she spoke Arabic pretty well.  Habibi responded by telling Dania that it didn't matter because she and her sister (the Plaintiff) "weren't Muslim," and that their mother "didn't do a good job raising [them]," or words to that  effect. Habibi also had made comments regarding his belief that the Plaintiff and her sister drinking alcohol, serving drinks and the way they dressed for work were improper for Muslim women. This conversation confirmed the reasons for Habibi's harassing and discriminatory conduct.

19. Plaintiff and her sister  rightly felt that they were not required to explain their religion or their beliefs with respect to their  service of drinks or food at the restaurant.

20. The hostile work environment continued in January 2020, when Plaintiff was closing the restaurant, Habibi asked her to retrieve additional glassware. Plaintiffs accidentally broke one of the glasses, and Habibi forced her to pay $5 for the glass out of her own funds.  Habibi consistently yelled at Plaintiff and her sister and assigned them special tasks, such as wiping down the window frames and cleaning out the cabinets, far more than the other bartenders.

21. Although Plaintiff was always extremely cautious around Habibi during her employment at Jimmy's Famous Seafood, Habibi continued to harass Plaintiff and treat her differently than other employees throughout her employment.  Plaintiff and her sister were both uncomfortable whenever Habibi came behind the bar, because he would stare at them with obvious disapproval

and hostility while they were performing their jobs and abruptly and rudely interrupt conversations they were having with male guests of the restaurant. It was so obviously inappropriate that customers would often ask Plaintiff and her sister if everything was okay.

22. In or around March or April 2020, Jimmy's Famous Seafood was closed for dining due to COVID-19. However, Plaintiff continued to work making to-go drink orders. After leaving her shift on one occasion, Plaintiff remained outside of the building to talk to two male guests. As she was doing so, she noticed that Habibi had come outside to watch her in an overbearing, unrelenting way. Plaintiff experienced that if Habibi saw her speaking to men, drinking, or taking any action that he considered negative in his religion, she would be harassed and retaliated against in the workplace as a result. Accordingly, Plaintiff stopped speaking to both men (who she considered to be friends) after work at Jimmy's.

23. Similarly, many employees at Jimmy's would sit at one of the outside bars to have a drink after work. On each occasion that Habibi would see Plaintiff drinking an alcoholic beverage at one of the outside bars, he would immediately come outside to intimidate Plaintiff by staring at her. He did not come outside to stare at non-Muslim employees who were drinking at one of the outside bars after work.

24. Upon information and belief, in or around March and July 2020, on at least two separate occasions while Plaintiff was serving tables outside, Habibi checked Plaintiff Hammoud's handbag, as well as her sister's bag, yet he did not do that to other non-Muslim female employees. This also occurred sometime in or around January or February 2020.

25. Further, in or around May 2020, after unloading a delivery truck, Matthew Hegrarty ("Mr. Hegrarty"), the back of house manager, gave Plaintiff and three other employees a bag of alcoholic Hoop Tea to share, as it was after hours and the bag had a tear in it and could not

be given to guests. When Habibi saw Plaintiff drinking the alcoholic Hoop Tea he forcibly took the bag and cups from Plaintiff and threw them out in the presence of other coworkers.

26. Upon information and belief, Habibi would not have reacted in this manner had Plaintiff not been present on this occasion, as he specifically singled her out due to his expectations for strict Muslim women.

27. After this incident, Ms. Hammoud texted Mr. Hegrarty and asked him to tell Habibi that he was the one who gave them the Hoop Tea and to stop staring at her while she is working because it was improper and makes her feel uncomfortable.

28. Again, in or around May 2020, during the month of Ramadan, Habibi approached Plaintiff and discriminated against her when he told her that she needed to wear longer sleeves that covered her shoulders at work. He further told her that she was not allowed to wear the Jimmy's Famous Seafood tank top that other workers were permitted to wear. This was a work approved tank top, which had not been a dress code problem before, and another female coworker that day was allowed to wear the tank top without issue. Plaintiff was specifically singled out due to her religion.

29. Also, during the month of Ramadan, Habibi repeatedly asked Plaintiff if she was fasting. He also criticized Plaintiff for not fasting when he saw her drinking a non-alcoholic beverage at work.

30. Again, in or around May 2020, Habibi singled out and inappropriately yelled at Plaintiff and threatened her job in front of at least four employees, including Stephanie Forgrave ("Ms. Forgrave") who is a manager, regarding her need to clock out, despite not asking the same of other employees. Plaintiff had just finished her shift and was on her way to clock out, but when she tried to explain this to him, Habibi merely yelled over her, embarrassing her in front of her

coworkers and guests of the restaurant. Ms. Forgrave, although a witness to the bullying and harassing conduct, told Ms. Hammoud to "let it go" and "ignore him", but she did nothing to intervene regarding the continued discrimination and harassment.

31. In fact, Habibi was continually hostile to Plaintiff and routinely yelled at her in this manner and accused her of "stealing hours" before Plaintiff ever had a chance to clock out of her shift.

32. After Ms. Forgrave witnessed the discriminatory conduct and Plaintiff spoke to Ms. Forgraves regarding the same. However, Plaintiff's complaints of harassment and discrimination were, once again, ignored by Defendant's management. Defendant's on-going failure to take any remedial action, or even investigate Plaintiff's complaints is consistent with the fact that Jimmy's does not have any formal written employment discrimination, harassment policies or complaint procedures.

33. Instead, Plaintiff was retaliated against by Jimmy's Famous Seafood management, including Habibi. For example, in or around July 2020, Plaintiff noticed that her schedule was changed, and she was no longer working at a company golf tournament, a usually very lucrative event, without explanation. Plaintiff texted John Minadakis, one of the two owners of Jimmy's Famous Seafood, who told her that she would be brought back on to work the golf tournament as long as she brought in three positive online reviews. None of the other employees were required to produce reviews in order to work the event.

34. In or around July 2020, Jimmy's Famous Seafood moved tables outside for guests due to COVID-19 and kept the interior restaurant open for carryout. When this change was made, Plaintiff was forced to serve tables outdoors. On a Sunday in or around July 2020, Rini Koutsoukos ("Ms. Koutsoukos"), the head server, asked Plaintiff how she enjoyed

serving outside. Plaintiff stated that it would be preferable if the shifts were split instead of working a double shift in nearly 100-degree weather, as the weather was hot and uncomfortable. Ms. Koutsoukos told Plaintiff that she was ungrateful and there were no issues with working outside.

35. Shortly after speaking to Ms. Koutsoukos, Plaintiff went to use the Point-of-Sales ("POS") system. Robert "B.J." Parker, ("Mr. Parker"), who was recently promoted to General Manager, also retaliated against Plaintiff when he saw her doing this by storming over to the POS and unplugged it, while telling Plaintiff to go back outside because no one was allowed to use the indoor POS systems. Another server, Jada Morgan, witnessed this and followed Plaintiff to check on her, as she was mortified at the situation. Mr. Parker is a long-time co-manager and friend of Habibi.

36. As a result of Habibi, Plaintiff and her sister were required to work double-shifts in extremely hot weather, and they were yelled at by managers if they stepped inside to cool off. Other workers had not suffered a similar plight at the restaurant.

37. On or about July 20, 2020, Plaintiff and her sister Dania were approached by Tony Minadakis ("Minadakis"), a co-owner of Jimmy's Famous Seafood. Mr. Minadakis told them that, during a manager meeting earlier that day, Mr. Parker stated that both Ms. Hammoud and Dania were "against" management and were vocal about things they did not agree with happening at the workplace. Plaintiff was shocked by this, as she had not had any issues with Mr. Parker and Mr. Minadakis, she had raised them against Habibi regarding the treatment due to her sex and religion. The owners did not provide any further detail into what was said about Plaintiff or her sister. Upon information and belief, Habibi had poisoned the working environment and management was also now retaliating against Plaintiff. Even in

this conversation, the subject of Plaintiff's attire came up when she was wearing the same shorts as other female servers, yet she was told to cover up her legs further.

38. Following this conversation, on another day in or around July 2020, Plaintiff asked Amber Kraus ("Kraus"), a floor manager, why the managerial team was acting cold towards her and her sister. Plaintiff told Ms. Kraus, in her managerial capacity, that she felt she was being targeted by Habibi for being female and a Muslim, and she did not understand why she was brought up in the manager's meeting that occurred on or about July 20, 2020.

39. Ms. Kraus stated that she told Mr. Minadakis after the meeting that she felt Plaintiff and Dania were being targeted and treated unfairly, as they were being held to a different standard than the rest of the staff due to their religion and gender. In fact, Ms. Kraus was fully aware that Plaintiff had been regularly subjected to harassment based on her sex and religion long before Ms. Kraus was promoted to manager.

40. All of the managers were fully aware that Plaintiff and her sister were being actively harassed and discriminated against but continued to ignore the problem and failed to take any type of remedial action.

41. On or about August 2, 2020, after working a double, Plaintiff Hammoud was approached by Gurvir Singh ("Mr. Singh"), a bartender and floor manager, regarding two complaints they had received about her. He informed Plaintiff that she would be suspended for two weeks. When Plaintiff asked what the complaints were, Mr. Singh vaguely responded that it was something about to-go food and something about a table's check. Plaintiff Hammoud stated that the to-go complaint was due to the kitchen getting the order wrong and not her, and the check was not a complaint at all, rather a family disagreement over who was paying. Mr. Singh brushed Plaintiff off saying that he would "look into it" and told her that "all management" decided to

suspend her for two weeks.

42. In an act of further retaliation, Plaintiff was forced to sign a confirmation of her two-week suspension, which was not properly explained to her, nor was the suspension form completely filled out when she was made to sign it.

43. Later, in or around August 2020, Ms. Hammoud became aware of two other employees who were suspended for one week due to not properly wearing face masks. One of those employees was asked to come back to work before the full suspension was served. The alleged complaints which were used to suspend Plaintiff were far less egregious than a public health concern, and she faced a longer suspension and was not asked to return early.

44. In fact, once Plaintiff Hammoud's two-week suspension was over, she was still not asked to return. Plaintiff was informed that Mr. Parker told her sister she "worked better" when Plaintiff was not around. Ms. Kraus also asked Mr. Parker and Mr. Singh about when Plaintiff would return, but they avoided the question.

45. On or about August 26, 2020, Plaintiff noticed that she was not placed on the new schedule, which occurred an additional two weeks after the conclusion of her two-week suspension. Further, she was no longer able to access Hot Schedules, the restaurant's scheduling program. She was not contacted by management about either change.

46. On or about August 27, 2020, Plaintiff texted Mr. Singh and asked if she could have a copy of the two-week suspension acknowledgment she had signed. Mr. Singh again brushed her off and directed her to Tiffany Buxenstein of Human Resources, who provided Ms. Hammoud with the same without question.

47. Upon receipt of the two-week suspension acknowledgment, Plaintiff noticed that there was information that had been added to the form that was not present when she was forced to

sign it, including a statement that she was being suspended for "rudeness" and that this was her second warning, when she never received a first warning. If she had been aware of these additions, Plaintiff would not have signed because both statements are false pretextual reasons for her suspension.

48. On or about August 31, 2020, Plaintiff was left off a bartender's meeting that she had always previously been included in. Further, she was the only bartender not given an assignment or mentioned during that meeting.

49. Habibi continued to harass the Plaintiff's sister even after the Plaintiff was suspended. For example, one-night Daria consumed some alcoholic beverages after work with some of her co-workers at Jimmy; the next day, Habibi told Daria that if it happened again, she would be fired, not suspended, but fired.

50. Thereafter, Habibi continued to act in a hostile manner, continually threatening Plaintiff's sister with -- "do you want to get suspended again or lose your job." Continuing in or around September, Dania and Kait, who is another bartender at Jimmy's Famous Seafood, were leaving work and both carried bags with them. After clocking out, Habibi told Dania to open her bag so he can check it. Habibi, however, did not check the other employee, Kait's handbag.

51. In or around September 2020, Plaintiff had still not been asked to return to work, despite hearing from her sister that the restaurant was extremely understaffed.

52. Plaintiff had been suspended and then was not scheduled for any shifts for an entire month, leading her to believe the suspension had turned into a termination. At no time was she returned to the schedule in a full-time capacity.

53. On or about September 3, 2020, approximately a month after she was suspended and last worked, and with no warning, Plaintiff received a text from Mr. Parker stating, "Not

sure what happened to your schedule. If you're still interested in working here, I do need a server for tonight." This was the first time that Plaintiff had been contacted about returning to work, however upon information and belief, the extreme short notice of this was an intentional effort to make Plaintiff appear as though she did not want the shift. Further, this was not an offer of reinstatement to her prior full-time position. At this point, Plaintiff was put in a position in which she was too uncomfortable with the continuous hostile working environment and discrimination to return to Jimmy's Famous Seafood under the current management. In other words, the retaliation, harassment, and disparate treatment to which Plaintiff was subjected created a hostile work environment so intolerable that no reasonable person would stay. Accordingly, Plaintiff decided to pursue other options.

54. Due to the discrimination and hostile work environment that Plaintiff was forced to endure, she has suffered a loss of income, mental anguish, loss of weight, insomnia, and depression. Ms. Hammoud has physical reactions to the amount of stress she has been under due to her treatment at Jimmy's Famous Seafood, including breaking out in hives.

55. In addition to the harassment and hostile work environment, Ms. Hammoud was also subject to a reduction in her gross pay, as her year-to-date earnings in her earnings statements have been reduced by thousands of dollars.

56. Following the termination of her employment, Plaintiff filed timely charges of retaliation, gender, and religious discrimination with the Equal Employment Opportunity Commission, and satisfied all prerequisites to filing this lawsuit under Title VII. This lawsuit is filed within 90 days of the EEOC's issuance of Notice of Right to Sue.

## COUNT I
**Religious Discrimination – Harassment and Disparate Treatment)**

57.     Plaintiff incorporates paragraphs 1-56 as set forth above, and states, in addition, that Plaintiff was treated less favorably than similarly-situated, non-Muslim employees, who were not harassed and disciplined for not adhering her supervisor's religious beliefs with respect what Muslim women should and should not be doing during her employment at Jimmy's and his perception that Plaintiff was acting outside of religious norms for Muslim women.

58.     Plaintiff was subjected to severe and pervasive hostile environment harassment based on her religion during her employment at Jimmy's Famous Seafood, which created an intimidating, hostile and offensive working environment and which adversely affected the terms, conditions and privileges of Plaintiff's employment. Defendant's management was fully aware of the hostile environment harassment and disparate treatment discrimination to which Plaintiff was subjected and failed to take any type of effective remedial action.

59.     The foregoing harassment and disparate treatment discrimination of the Plaintiff in the terms and condition so her employment, including but not limited to, harassing the Plaintiff, suspending the Plaintiff without pay and constructively terminating her employment, was based on her religion in violation of Title VII, 42 U.S.C. § 2000e-2(a).

60.     The acts and conduct described above caused Plaintiff to suffer have and experience damages, including lost wages and benefits, mental anguish, emotional pain and suffering, stress, anxiety, depression and loss of enjoyment of life.

## COUNT II

### (Sex Discrimination – Harassment and Disparate Treatment)

61.     Plaintiff incorporates paragraphs 1- 60 as set forth above, and state, in addition, that Plaintiff was treated less favorably than similarly-situated male employees, who were not harassed and disciplined for not adhering her supervisor's religious beliefs with respect what

Muslim women should and should not be doing during her employment at Jimmy's and his perception that Plaintiff was acting outside of religious and gender norms for Muslim women.

62. Plaintiff was subjected to severe and pervasive hostile environment harassment based on her sex during her employment at Jimmy's Famous Seafood, which created an intimidating, hostile and offensive working environment and which adversely affected the terms, conditions and privileges of Plaintiff's employment. Defendant's management was fully aware of the hostile environment harassment and disparate treatment discrimination to which Plaintiff was subjected and failed to take any type of effective remedial action.

63. The foregoing harassment and disparate treatment of the Plaintiff in the terms and conditions of her employment, including but not limited to, continually harassing the Plaintiff, suspending the Plaintiff without pay and constructively terminating her employment, by Defendant was based on her sex, female, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

64. The acts and conduct described above have caused Plaintiff to suffer and experience damages, including lost wages and benefits, mental anguish, emotional pain and suffering, stress, anxiety, depression and loss of enjoyment of life.

## COUNT III
### (Retaliation – Title VII)

65. Plaintiff incorporates paragraphs 1-64 as set forth above, and states that Defendant unlawfully retaliated against Plaintiff for complaining about and opposing unlawful discrimination and harassment by singling her out for disparate treatment, retaliatory harassment and adverse actions, including but not limited to, subjecting the Plaintiff, suspending the Plaintiff to severe and pervasive hostile environment harassment, suspending her without pay and constructively terminating her employment.

66. The acts and conduct described above have caused Plaintiff to suffer and experience

damages, including lost wages and benefits, mental anguish, emotional pain and suffering, stress, anxiety, depression and loss of enjoyment of life.

## **Prayer**

Based on the foregoing allegations, Plaintiff respectfully requests that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorneys' fees and costs; and in support thereof, request this Honorable Court grant the following relief:

(a) Grant a permanent injunction, enjoining the Defendant, and/or its corporate officers, from engaging in any employment practices which discriminates against individuals based on their sex or religion.

(b) Enter an order commanding the Defendant to implement policies and programs which provide equal employment opportunities, prohibit harassment and retaliation and establish complaint procedures to eradicate the effects of its past and present unlawful employment practices.

(c) Enter judgment in favor of Plaintiff and against Defendant for appropriate lost income wages with prejudgment interest in amounts to be determined at trial, for compensation for emotional pain and suffering, mental anguish, stress, anxiety and depression resulting from the unlawful practices complained of above, for compensatory damages in amounts to be determined at trial, and for compensation for any other past and future pecuniary losses resulting from the unlawful employment practices described above;

(d) Award Plaintiff her attorneys' fees and costs in pursuing this action.

(e) Award Plaintiff interest on any sums determined due and owing from Defendants, including pre-judgment interest on attorneys' fees and costs in

pursuing this action; and

(f) Grant Plaintiff any additional relief that the Court deems appropriate and just.

Respectfully submitted,

*/s/ Bradford W. Warbasse*
Bradford W. Warbasse
Federal Bar No. 07304
P.O. Box 1284
Brooklandville, Maryland 21022
(443) 862-0062
warbasselaw@gmail.com

*Counsel for Plaintiff*

## Jury Demand

The Plaintiff, by her attorney, hereby demands a jury trial as to all issues triable by a jury.

*/s/ Bradford W. Warbasse*
Bradford W. Warbasse